1  DENNIS K. BURKE
   United States Attorney
2  District of Arizona

3  PETER SEXTON
   Arizona State Bar No. 011089
4  Assistant United States Attorney
   Two Renaissance Square
5  40 North Central Avenue
   Phoenix, Arizona 85004
6  Telephone: (602) 514-7500
   peter.sexton@usdoj.gov
7
   THOMAS DOUGHERTY
8  Trial Attorney
   Computer Crime and Intellectual Property Section
9  Criminal Division, U.S. Department of Justice
   1301 New York Avenue, N.W., 6th Floor
10 Washington, DC 20530
   Telephone: (202) 514-1026
11 thomas.dougherty@usdoj.gov

12

                    UNITED STATES DISTRICT COURT
13
                        DISTRICT OF ARIZONA
14

15 United States of America,              )
                                          )   CR 09-785 PHX JAT
                            Plaintiff,    )
16                                        )   PLEA AGREEMENT
                                          )
17       v.                               )
                                          )
18 Hazim Gaber,                           )
                                          )
                            Defendant.    )
19 _____      )

20

21       Plaintiff, United States of America, and defendant, HAZIM GABER, with the advice

   and consent of defense counsel, agree to the following disposition of this matter:
22
                                    **PLEA**
23
         Defendant will plead guilty to Counts One through Five of the Criminal Indictment,
24
   which charges defendant with wire fraud, in violation of Title 18, United States Code,
25
   Section 1343, a felony offense.
26

1.      **Advisory Sentencing Guidelines.**

Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands, however, that the Sentencing Guidelines are only advisory, and that after considering the Sentencing Guidelines, the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

2.      **Maximum Penalties.**

a.      **Counts 1 - 5:** A Class C felony violation of Title 18, United States Code, Sections 1343, is punishable by a maximum fine of $250,000.00, or either twice the gross pecuniary gain derived by defendant from the offense or twice the pecuniary loss suffered by another person because of the offense, whichever sum is greater, Title 18, United States Code, Section 3571(b)(3) and (d), a maximum term of imprisonment of twenty (20) years, a maximum period of supervised release of three (3) years, or all three combined.

b.      The combined maximum penalty is a fine of $1,250,000.00, or either twice the gross pecuniary gain derived by defendant from these offenses or twice the pecuniary loss suffered by another person from these offenses, whichever sum is greater, a maximum term of imprisonment of one hundred (100) years, a maximum period of supervised release of three (3) years, or all three combined.

c.      According to the advisory Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court shall:

      1.      Order the defendant to make restitution to the victims of these offenses and any victims of his relevant conduct, as determined under Section 1B1.3 of the advisory Sentencing Guidelines and Title 18, United States Code, Sections 3663 and 3663A unless, pursuant to Title 18, United States Code, Section 3663, and Section 5E1.1 of the advisory

Sentencing Guidelines, the Court determines that restitution would not be appropriate in this case;

2.         Order the defendant to pay a fine, which may include the costs of probation, supervised release or incarceration, unless, pursuant to Title 18, United States Code 3572, the Court finds upon consideration of the factors therein and in Section 3552 that a fine is not appropriate;

3.         Order the defendant, pursuant to Title 18, United States Code, Section 3583 and Section 5D1.1 and 2 of the Guidelines, to serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed, and the Court may impose a term of supervised release in all other cases.

d.         Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a special assessment on the defendant of $100.00 per count of conviction. The special assessment is due at the time the defendant enters the plea of guilty, but in no event shall it be paid later than the time of sentencing.

**3.    Cooperation.**

The defendant will cooperate with the United States on the following terms and conditions.

a.         Defendant will waive the Fifth Amendment privilege against self-incrimination and will provide information in interviews and testify completely and truthfully at any time and any place requested by the United States, including at any state or federal grand jury proceeding, forfeiture proceeding, bond hearing, pretrial hearing, civil and criminal trial, retrial or post-trial hearing.

b.         All such information shall be truthful, honest, candid, and complete with no knowing material false statements or omissions. Such information shall include all criminal activity known to the defendant.

c.      Defendant will be available for interviews by attorneys and law enforcement officers from the government upon request and reasonable notice.

d.      Defendant will provide the United States with all documents, records, memoranda and the like, at the request of the United States, within the defendant's custody and control or to which the defendant has access, which are related to the subject matter of the investigation or case.

e.      Defendant will neither attempt to protect any person or entity through false information or omissions nor falsely implicate any person or entity.

f.      Defendant will not reveal that defendant is cooperating without prior notice to the United States Attorney's Office.

g.      Defendant agrees to notify the United States Attorney's Office of any contacts with any subjects or targets of the investigation, or their counsel.

h.      In the event the defendant or the defendant's family is harassed, threatened or otherwise subjected to intimidation because of defendant's cooperation, the United States shall, in its complete discretion, take appropriate action to protect defendant and the defendant's family.

i.      Nothing in this agreement requires the United States to accept any cooperation or assistance the defendant may choose to proffer.  The decision whether and how to use any information and/or cooperation that defendant provides is in the exclusive reasonable discretion of this office.

j.      Defendant will not violate any local, state, federal, tribal or foreign laws.

k.      The defendant shall comply with all terms and conditions of release.

l.      The defendant will also provide all information concerning defendant's assets, and the assets of all co-defendants, if known, for the purpose of restitution.

m.      Defendant shall not knowingly contact any person who has been criminally charged in any forum.

1    n.    Self-incriminating information provided by the defendant during cooperation,

2  involving criminal activity for which the defendant has not been or will not be charged

3  pursuant to this agreement, will not be used against the defendant and, in particular, will not

4  be used in determining defendant's advisory guideline range pursuant to Section 1B1.8 of the

5  Sentencing Guidelines.

6    o.    Nothing shall limit the United States' methods of verifying the truthfulness of

7  defendant's statements.  The United States may confirm the accuracy of any information

8  which defendant provides under the terms of this agreement by use of any investigative

9  means which it deems appropriate and necessary.  Whether there has been a complete,

10  truthful and candid disclosure by the defendant will be evaluated and decided by the United

11  States Attorney for the District of Arizona and by him alone

12    p.    The plea of guilty shall be entered as soon as practicable.

13    q.    The sentencing on the guilty plea will be deferred, with consent of the court,

14  until such time as defendant's cooperation has been completed.

15    r.    At the conclusion of defendant's cooperation, pursuant to this Plea Agreement,

16  the United States may, at the of sentencing, move pursuant to Title 18, United States Code,

17  Section 3553(e), Title 28, United States Code, Section 994(n), and advisory Sentencing

18  Guidelines Section 5K1.1, that the Court depart from the advisory Guidelines to reflect any

19  substantial assistance the defendant may give during this investigation and prosecution.  If

20  a non-binding recommendation is made, it will be made according to Sentencing Guidelines

21  Section 5K1.1.  Defendant understands that while the Court may take the defendant's

22  cooperation into account in determining the sentence to be imposed, the Court has complete

23  discretion to impose a sentence within the statutory maximum penalty for the defendant's

24  offense of conviction.

25

26

4. **Recommendations Regarding Sentencing.**

a.       In addition to the possibility of a variance or departure for cooperation as discussed above, and assuming defendant fully cooperates with the United States, the government will make a non-binding recommendation that the Court sentence the defendant to the low end of the appropriate sentencing range.

b.       If the defendant makes a full and complete disclosure to the Probation Department of the circumstances surrounding defendant's commission of the charged offenses and related conduct, and demonstrates an acceptance of responsibility for defendant's actions by virtue of defendant's conduct up to and including the time of sentencing, the United States will, pursuant to Section 3E1.1 of the advisory Sentencing Guidelines, make a non-binding recommendation to the sentencing Court that the Court reduce by two (2) levels the adjusted offense level applicable to this offense.  If the defendant's offense level is a level sixteen (16) or greater, before factoring in any reduction for acceptance of responsibility, the United States will make a non-binding recommendation that the Court reduce by three (3) levels the adjusted offense level applicable to this offense, pursuant to advisory Sentencing Guideline § 3E1.1(b).

c.       Defendant understands that the United States' recommendations are not binding on the Court.

d.       The United States retains the unrestricted right to make any and all statements it deems appropriate to the Probation Office and to make factual and legal responses to any statements made by the defendant or defense counsel or objections to the presentence report or to questions by the Court at the time of sentencing.

5. **Defendant's Agreements and Obligations.**

a.       The United States and defendant agree that the amount of loss in this matter is at least $60,000.00.  This represents approximately $13,000.00 in direct and indirect losses stemming from the indicted charges, as well as approximately $47,000.00 in losses for the

6

related conduct associated with copyright violations, as more fully set forth below in the

factual basis.  However, defendant understands that the precise amount will be determined

before sentencing and could be higher than the stated amount. Defendant further understands

that the amount of restitution will be determined by the Court.

b.      Defendant agrees to be responsible for all current and back taxes owed, with

interest and penalties, for tax liabilities accrued for any monies or funds received by him

from his wire fraud scheme and/or other criminal conduct, including relevant conduct.

Defendant will cooperate with the appropriate foreign or domestic government revenue

authorities in determining the amount of taxes, interest and penalties owed.  This provision

is to be complied with before sentencing. Defendant understands that failure to comply with

this provision may result in the denial of any benefit under 5K1.1.

c.      Defendant agrees not to oppose the transfer or sending of any

evidence from any foreign government, including, but not limited to Canada and Germany,

to the United States and waives any right to challenge its admissibility in any United States

Court.

d.      Defendant agrees to identify all websites, domain names, internet service

accounts or any other internet entities created, controlled or managed by defendant.

Defendant further agrees to take down, forfeit or cancel any website, domain name or

internet services account related to any criminal conduct, including but not limited to:

DCAAdvice.com, PurchaseDCA.com, watchtvsitcoms.com,  jitterville.com, and the like.

Additionally, defendant agrees to cancel any marketing or advertising contract or accounts

associated with any of the websites or domain names identified as connected to criminal

activity and to forfeit any proceeds traceable to these websites or domain names.

e.    Defendant agrees to pay any restitution, fines, forfeiture or special assessments ordered by the Court within thirty (30) days of sentencing.  The parties intend to meet and determine the scope of defendant's unjust enrichment from the indicted and related conduct set forth below in the factual basis.  After a determination is made, the defendant agrees to disgorge those illicit gains through fines and/or other forfeiture arrangements.

6.    **Breach of the Agreement.**

If the defendant fails to comply with any obligation or promise in this Plea Agreement, the United States:

a.    may, in its sole discretion, declare any provision of this Plea Agreement null and void, and the defendant understands that the defendant will not be permitted to withdraw the plea of guilty made in connection with this Plea Agreement;

b.    may prosecute the defendant for any offense known to the United States for which the defendant is responsible, and defendant waives any statute of limitations, Speedy Trial Act, and constitutional or other restrictions for bringing charges after the execution of this Plea Agreement;

c.    may argue for a maximum statutory sentence for the offenses to which defendant has pled guilty;

d.    may use in any prosecution any information, statement, document, or evidence provided by defendant both before and after entering into this Plea Agreement, including derivative evidence;

e.    may advise the Bureau of Prisons that defendant is no longer a cooperating witness, and recommend redesignation of defendant to a higher custodial level.

If there is a dispute regarding the obligations of the parties under this Plea Agreement, the United States District Court shall determine whether the United States or the defendant has failed to comply with this Plea Agreement, including whether the defendant has been truthful.

7.   **Agreement to Dismiss or Not to Prosecute**.

a.   The United States agrees not to bring any additional federal charges against the defendant arising out of the facts alleged in the Indictment, or otherwise described in the factual basis referenced in this Plea Agreement, excluding crimes of violence, if any.

b.   This agreement does not, in any manner, restrict the actions of the United States in any other district nor bind any other United States Attorney's Office.   Nor does this agreement restrict the actions of any state, local or foreign government.

8.   **Waiver of Defenses and Appeal Rights**.

The defendant waives any and all motions, defenses, probable cause determinations, and objections which the defendant could assert to the Indictment or to the Court's entry of judgment against the defendant and imposition of sentence upon the defendant, providing the sentence is consistent with this Plea Agreement.   The defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence upon defendant under Title 18, United States Code, Section 3742 (sentence appeals); and (3) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255, or any other collateral attack. The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his conviction or sentence in this case.

9.   **Perjury and Other False Statement Offenses or Other Offenses**.

Nothing in this Plea Agreement shall be construed to protect the defendant in any way from prosecution for perjury, false declaration or false statement, or any other offense committed by defendant after the date of this Plea Agreement.   Any information, statements, documents, and evidence which defendant provides to the United States pursuant to this Plea Agreement may be used against the defendant in all such prosecutions.

10.     **Reinstitution of Prosecution.**

If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute the defendant for all charges of which it has knowledge, and any charges that have been dismissed because of this Plea Agreement will be automatically reinstated.  If that occurs, defendant waives any objections, motions, or defenses based upon the Statute of Limitations, the Speedy Trial Act or constitutional restrictions in bringing of the later charges or proceedings.  The defendant also agrees and understands that any statements made by defendant during cooperation or at the time of the defendant's sentencing may not be used against the defendant in any subsequent hearing, trial, or proceeding, except for impeachment, cross-examination or rebuttal of any witness, including the defendant.  All other evidence derived from defendant's cooperation may be used by the United States directly against the defendant in its case-in-chief, for cross examination or rebuttal in any hearing, trial or proceeding.

11.     **Disclosure of Information to U.S. Probation Office.**

Defendant understands the United States' obligation to provide all information in its file regarding defendant to the United States Probation Office.  The defendant will cooperate fully with the United States Probation Office.  Such cooperation will include truthful statements and response to any questions posed by the Probation Department.

12.     **Forfeiture, Civil, and Administrative Proceedings.**

a.      Nothing in this agreement shall be construed to protect the defendant from civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture.

b.      Defendant will identify all assets and identify the source of income used to obtain the assets. Defendant will identify all assets used to facilitate the commission of any crime charged in this indictment.  Defendant will testify truthfully in any civil forfeiture proceeding.

10

c.      Further, this agreement does not preclude the United States from instituting any civil or administrative proceedings as may be appropriate now or in the future.

## ELEMENTS AND FACTUAL BASIS

The defendant understands that if the case were to proceed to trial, the government would be required to prove the following elements beyond a reasonable doubt before the defendant could be found guilty of the offenses to which the defendant is pleading guilty:

I understand that the essential elements of **Wire Fraud (Counts 1- 5)**, in violation of Title 18, United States Code, Section 1343, are as follows:

(1)     During the time frame set forth in the Indictment, defendant and other co-conspirators and co-schemers made up a scheme or plan for obtaining money or property by making false promises or statements;

(2)     Defendant knew that the promises or statements were false;

(3)     The false promises or statements were material, that is they would reasonably influence a person to part with money or property;

(4)     Defendant acted with the intent to defraud; and

(5)     In advancing, furthering or carrying out the scheme, defendant transmitted, or caused to be transmitted, writings, signs, signals, pictures, or sounds by means of wire, radio or television communications in interstate commerce.

I further agree that if this matter were to proceed to trial, the United States could prove the following facts beyond a reasonable doubt:

1.      Defendant, HAZIM GABER conducted business using the domain names "DCAAdvice.com," "PurchaseDCA.com" and used the following email addresses "hgaber@gmail.co," "payments@watchtvsitcoms.com,""payments2@watchtvsitcoms.com," and "contact@dcaadvice.com," to fraudulently sell substances purported to be the cancer drug sodium dichloroacetate also known as "DCA."

11

1        2.   DCA is an odorless, colorless, inexpensive, relatively non-toxic experimental

2    cancer drug that is highly sought by cancer patients.  A doctor at the University of Alberta,

3    Canada published a report in early 2007 summarizing the results of a study, which showed

4    that DCA caused regression in several cancers, including lung cancer, breast cancer, and

5    cancerous brain tumors.  DCA cannot be prescribed by a medical doctor in the United States

6    or Canada, since it is currently not approved for use in patients with cancer, nor is DCA

7    available in pharmacies.

8        3.   GoDaddy.com ("GoDaddy") is an internet services company located in Scottsdale,

9    Arizona offering domain name registration, email services, web hosting services and server

10   services.  The Go Daddy Group of companies also includes Wild West Domains, Inc., a

11   reseller of domains and domain-related products and services; Domains by Proxy, a private

12   registration service; Starfield Technologies, a research and development affiliate; and Blue

13   Razor Domains, a membership-based discount registrar.

14       4.   Paypal is an electronic payment system which allows the user to pay and to be

15   paid via the internet.  Paypal allows the user to pay for an item using and existing PayPal

16   account, a linked bank account and/or a linked credit card.

17                         **COUNTS ONE THROUGH FIVE**

18                               Wire Fraud

19                        (18 U.S.C. § 1343)

20       5.   Beginning at least as early as on or about October 2007, and continuing to at least

21   on or about November, 2007, in the District of Arizona and elsewhere, defendant HAZIM

22   GABER, using the domain names "DCAAdvice.com" and "PurchaseDCA.com," and the

23   following   email   addresses,   among   others,   to   include   "hgaber@gmail.com,"

24   payments@watchtvsitcoms.com,""payments2@watchtvsitcoms.com,"   and

25   "contact@dcaadvice.com," did knowingly and willfully devise and intend to devise a scheme

26

1   and artifice to defraud and to obtain money and property by materially false and fraudulent

2   pretenses, representations and promises.

3   **THE SCHEME AND ARTIFICE TO DEFRAUD**

4        7.   It was part of the scheme and artifice that on or about on or about October 11,

5   2007, defendant GABER logged into a GoDaddy account associated with Shopper ID

6   7798190 and purchased the domain names "DCAAdvice.com" and "PurchaseDCA.com" and

7   provided the following false registration information: "John Classen, University of Alberta,

8   31205   RPO   Namao,   Edmonton,   Alberta   T5Z3B8,   Canada",   email   address

9   "contact@dcaadvice.com" and phone number "43484934521."

10        8. It was further part of the scheme and artifice to defraud that defendant GABER,

11   established four PayPal accounts through which he received electronic payments for

12   counterfeit DCA.   At least two of the PayPal accounts were established by defendant

13   GABER through a server leased by the defendant from GoDaddy.

14        9.   It was further part of the scheme and artifice to defraud that defendant GABER

15   established a website using the domain name "DCAAdvice.com" to fraudulently sell

16   counterfeit DCA  to at least 68  victims in the United States, Canada, Belgium, the United

17   Kingdom and the Netherlands charging $23.68 for 10 grams, $45.52 for 20 grams, or

18   $110.27 for 100 grams plus shipping.

19        10. It was further part of the scheme and artifice to defraud that "DCAAdvice.com"

20   contained several material misrepresentations including, but not limited to:

21        a. "DCAAdvice.com"  displayed the logo of the University of Alberta when

22        defendant GABER  well knew that the University of Alberta had no affiliation with

23        the site nor sanctioned the use of the logo.

24        b. That "DCAAdvice.com" was the only legal supplier of "CERTIFIED

25        PHARMACEUTICAL-GRADE Dichloroacetate"when defendant GABER well

26        knew that this was false.

c. That "DCAAdvice.com" had treated "over 1000 cancer patients with DCA" and that they had observed "substantial tumor shrinkage in 80-90% of our patients" when Defendant GABER well knew that this was false.

11. It was further part of the scheme and artifice to defraud that defendant GABER would use the Postal Service to distribute a white powdery substance which literature enclosed in the packaging fraudulently claimed to be DCA, when in fact the substances were either starch, dextrin, dextrose or lactose and contained no DCA.

**THE USE OF THE WIRES**

12. On or about the dates listed below, each date constituting a separate count, in the District of Arizona and elsewhere, for the purpose of executing said scheme and artifice to defraud and to obtain money by means of materially false and fraudulent promises, pretenses and representations, defendant HAZIM GABER, transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, the following writings, signals, pictures or sounds as more particularly described below:

| Count | Date | Wire Communication |
|---|---|---|
| 1 | October 19, 2007 | PayPal electronic payment of $125.26 from victim DF of Edmonton, Canada to "contact@dcaadvice.com" for 100 grams of counterfeit DCA |
| 2 | October 19, 2007 | PayPal electronic payment of $125.26 from victim AZ of Raymond, Washington, to "contact@dcaadvice.com" for 100 grams of counterfeit DCA. |
| 3 | October 24, 2007 | PayPal electronic payment of $38.67 from victim SO of North Richland Hills, Texas to "contact@dcaadvice.com" for 10 grams of counterfeit DCA |

14

| 4 | October 28, 2007 | PayPal electronic payment of $60.51 from victim ES of Solvang, California to "hgaber@gmail.com" for 20 grams of counterfeit DCA |
| 5 | October 29, 2007 | PayPal electronic payment of $125.26 from victim WP of Glen Allen, Virginia to "hgaber@gmail.com" for 100 grams of counterfeit DCA |

All in violation of Title 18, United States Code, Section 1343.

I also agree that the court may consider as relevant conduct my violation of 18 U.S.C. § 2319(b)(1) and 17 U.S.C. § 506(a)(1)(A) - Criminal Copyright Infringement. I agree that between on or about February 24, 2007 through December 24, 2008, in the District of Arizona and elsewhere, I willfully and for the purposes of private financial gain, did infringe a copyright by the reproduction and distribution, during a 180-day period, of at least (10) copies of one (1) or more copyrighted works which had a total retail value of more than $2,500. All in violation of Title 18 United States Code Section 2319(b)(1) and Title 17 United States Code Section 506(a)(1)(A). Specifically, I sold at least 801 digital copies of pirated business software for at least $47,010.02.

I further agree that the following sentencing enhancements apply in this case:

1. The indicted offense involved over 50 victims. USSG § 2B1.1(b)(2)(B)

2. The offense involved a misrepresentation that I was acting on behalf of a educational organization, namely the University of Alberta. USSG § 2B1.1(b)(8)

3. A substantial part of a fraudulent scheme was committed from outside the United States. USSG § 2B1.1(b)(9)

4. I knew or should have known that a victim of the offense was a vulnerable victim. USSG § 3A1.1(b)(1)

15

5.   The offense involved a large number of vulnerable victims, at least 63 victims. USSG § 3A1.1(b)(2)

6.   The offense involved the false registration of a domain name. USSG § 3C1.4

I understand that I will have to swear under oath to the accuracy of this statement, and if I should be called upon to testify about this matter in the future, any intentional material inconsistencies in my testimony may subject me to additional penalties of perjury or false swearing which may be enforced by the United States under this agreement.

**DEFENDANT'S APPROVAL AND ACCEPTANCE**

I have read each of the provisions of the entire Plea Agreement with the assistance of counsel and understand its provisions.

I have discussed the case and my constitutional and other rights with my attorney.  I understand that by entering my plea of guilty I will be giving up my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination -- all with the assistance of counsel -- and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this Plea Agreement.

I have been advised by my attorney of the nature and elements of the charges to which I am entering my guilty plea.  I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence will be determined according to the Sentencing Guidelines promulgated pursuant to the Sentencing Reform Act of 1984. I understand that the Guideline range discussed with my attorney or the prosecution is not binding on the Court and is merely my attorney's or the United States's estimates.

My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this Plea Agreement.  I agree to the provisions of this Plea Agreement

16

1   as a voluntary act on my part, rather than at the direction of or because of the

2   recommendation of any other person, and I agree to be bound according to its provisions.

3       I fully understand that, if I am granted probation or placed on supervised release by

4   the Court, the terms and conditions of such probation/supervised release are subject to

5   modification at any time. I further understand that if I violate any of the conditions of my

6   probation/supervised release, my probation/supervised release may be revoked and upon such

7   revocation, notwithstanding any other provision of this agreement, I may be required to serve

8   a term of imprisonment or my sentence may otherwise be altered.

9       I agree that this written Plea Agreement contains all the terms and conditions of my

10  plea and that promises made by anyone (including my attorney), and specifically any

11  predictions as to the applicable guideline range, which are not contained within this written

12  Plea Agreement, are without force and effect and are null and void.

13      I am extremely satisfied that my defense attorney has represented me in a very

14  competent manner.  I am fully capable of understanding the terms and conditions of this Plea

15  Agreement.  I am not now on or under the influence of any drug, medication, liquor, or other

16  intoxicant or depressant, which would impair my ability to fully understand the terms and

17  conditions of this Plea Agreement.

18

19  _April 11, 2010_ _____        _Hazim Gaber_ _____
    Date                              HAZIM GABER

20                                    Defendant

21

22              **DEFENSE ATTORNEY'S APPROVAL**

23      I have discussed this case and the Plea Agreement with my client, in detail, and

24  have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the

25  constitutional and other rights of an accused, the factual basis for and the nature and

26  elements of the offense to which the guilty plea will be entered, possible defenses, and the

17

consequences of the guilty plea.  No assurances, promises, or representations have been given to me or to the defendant by the United States or by any of its representatives which are not contained in this written agreement.  I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this Plea Agreement as in the best interests of my client.  I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

5/11/10
Date

Michael Baker
Attorney for Defendant

## UNITED STATES' APPROVAL

We have reviewed this matter and the Plea Agreement.  We agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

5/11/10
Date

PETER SEXTON
Assistant U.S. Attorney
THOMAS S. DOUGHERTY
Trial Attorney, U.S. Dept of Justice

18

**COURT'S ACCEPTANCE**

25 AUG 10
Date

United States District Judge

19